Allan D. NewDelman, Esq. (004066)
ALLAN D. NEWDELMAN, P.C.
80 East Columbus Avenue
Phoenix, Arizona 85012
Telephone: (602) 264-4550
Facsimile: (602) 277-0144
Email: ANEWDELMAN@QWESTOFFICE.NET
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Stacia Christine Hill<br><br><br><br>Debtors | In Proceedings Under<br>Chapter Eleven<br><br>Case No. 08-00164 CGC<br><br>PLAN OF REORGANIZATION<br><br>DATED: AUGUST 24, 2009 |

Debtor, Stacia Christine Hill, hereby submits her Plan of Reorganization in accordance with 11 U.S.C. §1121(a).

## I. DEFINITIONS

As utilized in this Plan of Reorganization (hereinafter "Plan") and in the Disclosure Statement (hereinafter "Disclosure Statement") which accompanies this Plan of Reorganization, the following definitions apply to the following terms:

1. "Adequate information" means information that would enable a hypothetical reasonable investor typical of holders of claims or interest of the Debtor's estate to make an informed judgment about the Debtor's Plan of Reorganization.

2. "Allowed and Approved Claim" shall mean a timely filed Proof of Claim pursuant to an Order of the Court setting a bar date to which that claim should be filed and no objection to

the claim having been filed. If an objection to a claim is filed, said claim will be allowed to the extent ordered by the Court.

3. "Bankruptcy Code" shall mean the Bankruptcy Code as set forth in Title 11 of the United States Code.

4. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Arizona.

5. "Confirmation of the Plan" shall mean the entry of an order by the Bankruptcy Court confirming the Plan of Reorganization in accordance with §1129 of the Bankruptcy Code.

6. "Consummation of the Plan" means the accomplishment of all things required or provided for under the terms of the Plan.

7. "Court" shall mean the United States Bankruptcy Court for the District of Arizona.

8. "Creditors" shall mean all persons holding claims for secured and unsecured obligations, liabilities, demands or claims of any nature whatsoever against the Debtors arising at any time prior to confirmation of the Plan and administrative creditors.

9. "Debtor" is the petitioner in the above-captioned Bankruptcy case.

10. "Disclosure Statement" shall mean the Disclosure Statement filed in this case approved, after notice and a hearing by the Court as being in conformity with §1125 of the Bankruptcy Code.

11. "Effective date" shall be the same as the Plan distribution date as set forth herein below.

12. "Petition" means the original Chapter 11 Petition filed by the Debtor.

13. "Plan" shall mean Plan of Reorganization accompanying the Disclosure Statement as

it may be amended, modified and/or supplemented pursuant to which Debtor proposes payment in whole or in part of creditors' claims.

14. "Plan distribution date" shall be 30 days from the date that the Chapter 11 Plan is confirmed and then on the 30th day of each month thereafter.

15. All other terms not specifically defined by this Plan or Disclosure Statement shall have the meaning as designated in §101 of the Bankruptcy Code or, it not contained therein, their ordinary meaning.

## II. CLASSES OF CLAIMS

Administrative Claims.

These claims consist of the expenses of administration of the estate including attorney fees for Debtor's counsel and any unpaid fees to the U.S. Trustee

Unsecured Claims.

As reflected in the amended schedules filed by the Debtor, Debtor has unsecured claims in the sum of $135,246.25.

Secured Claims.

The original schedules reflect secured debt in the amount of $488,512.64.

Tax Claims.

The schedules reflect no tax debts owed.

Child Support Claims.

As reflected in the schedules filed by the Debtor, there are no domestic support orders against the Debtor.

### III. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Classes 1, 2A, 3, 5 and 8 are not impaired under the Plan in that the Plan does not alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits payment over an extended period of time and/or the holder of the claim has agreed to a different treatment.

### IV. TREATMENT OF IMPAIRED CLAIMS UNDER THE PLAN

Classes 2,4,6, and 7 are impaired under the Plan. All allowed and approved claims or judicially determined claims will receive those amounts as reflected in the payment schedule under the Plan (Article V of the Plan).

### V. PAYMENT SCHEDULE UNDER THE PLAN

The Plan provides for 8 classes of claims with 1 subclass to be paid or administered in the following manner:

Administrative Claims (Class 1).

These claims are for the expenses of administration of the estate, including attorney fees for Debtor's counsel and to the U.S. Trustee, if any. The total fees incurred by the Debtor as of July 15, 2009 is $8,619.01 subject to an offset against the retainer of $1,500.00. Debtor believes, at the time that the Debtor's Chapter 11 Plan is confirmed, that there will an additional administrative expense claim in the approximate amount of $2,500.00. This claim shall be paid in cash, or in the amounts allowed by the Court upon the Plan distribution date unless otherwise agreed to between the Debtor and the administrative creditor. **(This class is not impaired.)**

Secured Claim (Class 2 - Saxon Mortgage Services [1]).

The mortgage obligation, is secured by the real property located at 11240 North 79th Avenue, Peoria, AZ. The Debtors shall make all contractual payments due under the Note outside the Chapter 11 Plan of Reorganization. The pre-petition arrearage claim in the amount of $10,086.54 shall be paid as set forth in the Disbursement Schedule, a copy of which is attached hereto as Exhibit "A". The Debtor has been in contact with the Creditor to do a loan modification which will cure the post-petition mortgage arrearage in the approximate amount of $3,544.28. In the event that the Debtor is unable to obtain a loan modification, the Debtor will pay the post-petition mortgage arrearage through the Chapter 11 Plan of Reorganization and will increase the monthly payment to the Creditor by the sum of $76.00. **(This class is impaired)**

Secured Claim (Class 2A - Countrywide Home Loans).

Creditor is secured by a second mortgage position on the real property located 11240 North 79th Avenue, Peoria, AZ. A Complaint to Determine the Validity, Priority or Interest in Property will be filed against Countrywide Home Loans. A proof of claim was filed on behalf of the Creditor in the amount of $48,886.37. This claim will be paid pursuant to the terms set forth in Class 7. **(This class is not impaired and/or no claim will exist in this Class.)**

Secured Claim (Class 3- Bank United)

Creditor is secured by a first mortgage lien on the real property located at 8009 West Greer, Peoria, AZ. The automatic stay was terminated in favor of Bank United on March 25, 2009 and the property was sold at foreclosure on October 2, 2008. Debtor asserts that this loan was a non-recourse

---

[1] Chase Home Finance, LLC sold or transferred the Note on the Property to Saxon Mortgage Services in April, 2009.

loan by the virtue of it being a purchase money loan. The Creditor shall have no deficiency or other general unsecured claim against the debtor or this estate. The confirmed Plan shall be *res judicata* and shall forever bar any claim (whether secured, unsecured or otherwise) of said creditor against the debtor or the estate. (**This class is not impaired and/or no claim will exist in this Class.**)

Secured Claim (Class 4 Arizona Federal Credit Union)

Creditor is secured by a purchase money lien on a 2006 Chevrolet 2500 Pickup truck. Arizona Federal Credit Union shall have a secured claim in the amount of $17,250.00 with interest to be paid at the contract rate. Arizona Federal Credit Union shall have an unsecured claim in the amount of $21,519.64 which shall be paid as a member of Class 7. Payments shall be paid as set forth in the Disbursement Schedule, a copy of which is attached hereto as Exhibit "A". (**This class is impaired**)

Secured Claim (Class 5 - Ecast Settlement Corporation [2])

Creditor was secured by a lien on a 2006 Honda TRX450ATV. The Debtor is the co-signor on this account. All payments will be made by Jacob B. Hill, the primary maker. (**This class is not impaired.**)

Unsecured Claims (Class 6)

All timely filed and approved claims under this Class shall be paid, *pro rata,* from all funds available for distribution as set forth in the Disbursement Schedule attached hereto as Exhibit "A." (**This class is impaired.**) Class 6 shall be made up of the following creditors with timely filed claims:

| Creditor Name | Claim No. | Claim Amount |
| --- | --- | --- |

---

[2] GE Money Bank sold the Note to Ecast Settlement Corporation in August, 2008.

| Creditor | Claim No. | Amount |
|---|---|---|
| Arizona Federal Credit Union | 1 | $ 1,066.25 |
| Arizona Federal Credit Union | 2 | $ 26,776.17 |
| GE Money Bank | 3 | $ 1,073.39 |
| Arizona Federal Credit Union | 5 | $ 21,519.64 |
| Chase Bank USA, N.A. | 7 | $ 814.17 |
| FIA Card Services, N.A. | 8 | $ 15,110.95 |
| Roundup Funding, LLC | 9 | $ 13,260.72 |
| Household Receivable Acquistion | 11 | $ 11,106.70 |
| John Crain | 12 | $ 3,000.00 |
| Ultramar Diamond Shamrock | 14 | $ 1,064.74 |
| TOTAL | | $ 94,792.73 |

Unsecured Claims (Class 7)

This Class shall be made up of those members who have had their secured liens affected by the filing of a Complaint to Determine the Validity, Priority or Interest in Property filed in this case. Members holding claims under this Class shall be paid, *pro rata*, from all funds available as set forth in the Disbursement Schedule attached hereto as Exhibit "A." **(This class is impaired.)** Class 7 shall be made up of the following creditors with allowed claims:

| Creditor Name | Claim No. | Claim Amount |
|---|---|---|
| Arizona Federal Credit Union | 5 | $21,519.64 |
| Countrywide Home Loans [3] | 12 | $48,886.37 |
| TOTAL | | $70,506.01 |

Debtor's Interest (Class 8)

Debtors shall retain all of the legal and equitable interest in exempt and non-exempt assets of this estate, as all reconciliation issues have been met. All estate property shall vest in the Debtors at confirmation. **(This class is not impaired).**

## VI. DISPUTED CLAIMS

Debtor reserves the right to verify and object to any proof of claim. Payment of disputed

---

[3] See Class 2A

7

claims shall be made only after agreement has been reached between the Debtor and the Creditor or upon the order of the Court. Any and all objections to proofs of claim will be filed within sixty (60) days of the Effective Date of this plan or will be waived.

## VII. . EXECUTORY CONTRACTS

At the time of the filing, the Debtor had no leases or executory contracts to either assume or reject.

## XI. DOMESTIC SUPPORT OBLIGATIONS

The Debtor does not have any ongoing Court ordered support obligations.

## XII. MEANS OF EXECUTION/PROJECTION

This Plan will be a base Plan with minimum payments of all timely filed and allowed claims to be made as set forth in the attached Disbursement Schedule. The total amount to be paid to the unsecured creditors will be $8,839.09. The Debtor may increase the amount of the payments set forth in the Disbursement Schedule should the Debtor's income permit. The funds necessary for the satisfaction of all approved and allowed claims will be derived from the Debtor's earned income. The Debtor reserves the right to accelerate payment under the Plan from financing obtained from third party financing. Debtor believes that by virtue of the Plan that she will have the ability to pay all allowed and approved claims pursuant to the Plan of Reorganization.

11 U.S.C. §1129(a)(15) provides for confirmation of a Chapter 11 Plan in which the Debtor is an individual and to which the holder of an allowed unsecured claim has objected to the confirmation of the Plan. While the Debtor does not foresee any objections to her Plan of Reorganization, the Debtor submits that she has met the absolute priority rule because the amount to be paid under the Plan is greater than the amount that any general unsecured creditor would

received if this case were a case under Chapter 7.[4] The "value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the plan provides payments, whichever is longer." 11 U.S.C. §(a)(15)(B). In this case the Debtor will contribute her disposable income for 60 months

## X. QUARTERLY FEES AND REPORTS

Debtor shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtor shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization. At such time, Debtor shall cease filing monthly operating reports and shall begin filing 90 day reports. These 90 day reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

## XI. IMPLEMENTATION AND CONSUMMATION OF PLAN

The terms of the Plan subsequent to confirmation shall bind the Debtor, any entity acquiring property under the Plan, and creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtor and shall be free from attachment, levy, garnishment or execution by creditors bound by the Plan.

Subsequent to confirmation of the Plan of Reorganization, the Debtor shall continue to

---

[4] The Liquidation Analysis, attached hereto as Exhibit C, shows that the general unsecured creditors would receive nothing if this case had been filed as a Chapter 7 and that reconciliation is a negative $44,497.56. The Debtor proposes to pay her general unsecured creditors the sum of $8,839.09 over a period of 60 months from the date that the Chapter 11 Plan is confirmed.

9

engage in her business as presently conducted or in such form or manner as the Debtor may deem advisable. The Plan does not provide for the liquidation of all or substantially all of the property of the estate. Notwithstanding the foregoing, however, the Debtor shall be free to operate in the ordinary course and may, without any further order of the Court, convey, sell, assign, purchase, or lease any property of or for the benefit of the estate.

It shall be the obligation of each creditor participating under the Plan to keep the Debtors advised of its current mailing address. In the event any payments tendered to creditors are mailed, postage prepaid, addressed (1) to the address specified in the Debtor's schedules and statement, (2) to the address specified in any proof of claim filed by a creditor or claimant herein or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to a lack or insufficiency of address or forwarding address, the Debtor shall retain such distribution for a period of six months. Thereafter, the distribution shall revert to the Debtor without further Order of the Court and free and clear of any claim of the named distributee. The Debtor shall thereafter not be required to mail subsequent distributions to any creditor for whom a distribution has been returned by the Post Office. The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the Plan still complies with §1122 and §1123 of the Bankruptcy Code. The Plan may be modified subsequent to confirmation and before substantial consummation of the Plan under such circumstances as may warrant such under §1123 of the Bankruptcy Code. Any holder of a claim or interest that has been previously accepted or rejected a confirmed Plan, shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within

the time fixed by the Court.

## XII. DEFAULT

The Debtor's failure to make any payment due under the Plan within sixty (60) days after demand for payment after its due date shall constitute a default unless the Debtor and the affected creditor agree to delayed payment.

Upon default, creditors may pursue any remedy provided by the state or federal law, including foreclosing any security interest, suing on any promissory note issued or continued in effect under the Plan.

## XIII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objection to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by estoppel, the principles of res judicata or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

DATED this 24th day of August, 2009.

ALLAN D. NEWDELMAN, P.C.

/s/ Allan D. NewDelman
Allan D. NewDelman
Attorney for Debtor

A copy of the foregoing
mailed/delivered this 24th
day of August, 2009, to:

Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, Arizona 85003

/s/ R. Scott Graves
R. Scott Graves
Paralegal

**APPROVED:**

_Stacia Christine Hill_ (signature)
STACIA CHRISTINE HILL

# EXHIBIT "A"

# STACIA CHRISTINE HILL
## USBC 08-00164 CGC
### Distribution of Payments to Made Under Chapter 11 Plan

| Quarter Ending | ADN Admin Claim | Saxon Mortgage Claim | Arizona FCU Claim | General Unsecured Creditors * | Total Monthly Payment |
|---|---|---|---|---|---|
| Month 1 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 2 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 3 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 4 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 5 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 6 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 7 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 8 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 9 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 10 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 11 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| Month 12 | 160.33 | 148.14 | 231.53 | 60.00 | **600.00** |
| **YEAR 1 TOTALS** | **$1,923.96** | **$1,777.68** | **$2,778.36** | **$720.00** | **$7,200.00** |
| Month 13 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 14 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 15 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 16 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 17 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 18 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 19 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 20 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 21 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 22 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 23 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| Month 24 | 160.33 | 171.61 | 298.06 | 70.00 | **700.00** |
| **YEAR 2 TOTALS** | **$1,923.96** | **$2,059.32** | **$3,576.72** | **$840.00** | **$8,400.00** |